FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 18, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | NO. 4:24-CV-5085-TOR |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER |
| v. | |
| FRED MEYER STORES, INC., | |
| Defendant. | |

BEFORE THE COURT are Plaintiff's Motion for Protective Order (ECF No. 37), Defendant's Motion to Seal (ECF No. 41), and Defendant's Motion for Leave to File Deposition Transcript Excerpts (ECF No. 47). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Motion for Protective Order (ECF No. 37) is **GRANTED**, Defendant's Motion to Seal (ECF No. 41) is **GRANTED**, and Motion for Leave to File Deposition Transcript Excerpts (ECF No. 47) is **GRANTED**.

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 1

## BACKGROUND

This case arises out of claims under Title VII of the Civil Rights Act of 1964 and Section 102 of the Civil Rights Act of 1991.  ECF Nos 1; 1-1.  Plaintiff alleges discrimination based on sex, unlawful harassment, and a hostile work environment.  ECF No. 1 at 2.  These claims stem from allegations of Defendant's male employee, George Templeton ("Templeton"), making inappropriate comments and contact with female employees, particularly Melissa Lozano ("Lozano"), beginning approximately in 2017.  ECF No. 1 at 5.  Plaintiff alleges that Defendant knew about this behavior and did not appropriately act to stop or prevent the conduct.  ECF No. 1 at 6-7.  This conduct continued through December of 2021, when Templeton's employment was terminated.  ECF No. 1 at 12.  Plaintiff seeks compensation "for emotional pain, suffering, and loss of enjoyment of life."  *Id.* at 14.

## DISCUSSION

Plaintiff objects to Defendant's discovery requests related to the medical information and mental health information of Lozano and Kierstin Pogue ("Pogue") (collectively "claimants").  ECF No. 37.

### A. Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 2

or defense and proportional to the needs of the case." Courts consider whether information is relevant and proportional by looking to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Recipients of a discovery request may move for a protective order to block the disclosure of evidence or narrow the scope of information sought. Fed. R. Civ. P. 26(c)(1). A protective order will issue for good cause, including to avoid "annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The burden of establishing good cause rests with the movant seeking the protective order, who must establish that specific prejudice or harm will result in the absence of protective measures. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2003); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). The mere fact that information would be inadmissible at trial does not remove it from the scope of discovery. Fed. R. Civ. P. 26(b)(1). Additionally, the movant must certify that it attempted to confer in good faith with affected parties prior to seeking judicial intervention. Fed. R. Civ. P. 26(c)(1). If the motion is warranted, the Court may forbid discovery, limit the scope of discovery, or specify the terms and procedures of disclosure. Fed. R. Civ. P. 26(c)(1)(A)-(H).

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 3

**B. Analysis**

Plaintiff contends that the claimants' medical and mental health information is not discoverable material due to privacy interests and privilege. First, Plaintiff argues that as Plaintiff has not alleged any physical injuries caused by the harassment, the claimant's physical condition is not at issue, and their medical records should remain private. ECF No. 37 at 8. Plaintiff also contends that the claimant's psychotherapist-patient privileges were not waived because they only claim "garden variety" emotional distress damages. *Id.* Plaintiff even provided Defendant with a signed stipulation stating the following:

> Plaintiff seeks "garden variety" emotional distress on behalf of Ms. Lozano and the female class and: (1) the EEOC does not claim that Defendant's actions or inaction with regard to Ms. Lozano and the female class resulted in any medically diagnosable condition; (2) the EEOC does not claim Defendant's actions or inaction resulted in the exacerbation of any condition that Ms. Lozano or any female class member may have had prior to working for Defendant; (3) the EEOC does not claim that Defendant's actions with regard to Ms. Lozano or any female class member resulted in any pecuniary damages, e.g. out of pocket medical costs; (4) the EEOC will not present any medical records of Ms. Lozano or any female class member at the time of trial; and (5) the EEOC will not call any treating health care provider or expert witness to prove Ms. Lozano's compensatory damages or that of any female class member, but will instead rely on lay testimony *e.g.* Ms. Lozano's own testimony.

ECF No. 39-1.

Plaintiff argues that disclosure of the claimants' medical and mental health information will violate their right to privacy and psychotherapist-patient

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 4

privileges, cause them embarrassment, and intimidate them from being part of the EEOC's action.  ECF No. 37 at 11.

Defendant contends that it is entitled to psychological or medical health records to determine the cause of the claimants' emotional distress and that any privilege has been waived.  ECF No. 40 at 8.

### 1. Psychotherapist-patient Privilege

"Psychological records are relevant in determining, among other things, causation for . . . or the magnitude of the alleged stress." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003).  However, even if relevant, the Supreme Court held in *Jaffee v. Redmond*, 518 U.S. 1 (1996), that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure," unless the privilege is waived by the patient.  *Jafee*, 518 U.S. at 5, 15 n.14.  Courts in this Circuit are split as to whether a claim of emotional distress damages waives the privilege.  Courts following the "narrow" approach find "that where a plaintiff alleges 'garden-variety' emotional distress, without relying on medical records or medical expert testimony for proof at trial, the patient-physician privilege is not waived." *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 640 (E.D. Wash. 2011) (collecting cases).  Whereas courts following the "broad" approach conclude the privilege is waived whenever a plaintiff places his mental condition at issue.  *Id.*

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 5

(collecting cases).

Other courts have identified a "middle ground" approach and find the privilege is waived where the plaintiff alleges more than "garden-variety" emotional distress, i.e., "ordinary or commonplace emotional distress." *Carrig v. Kellogg USA Inc.*, No. C12-837RSM, 2013 WL 392715, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000)); *see also Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 179 (N.D. Iowa 2001) ("['Garden variety' claims] are claims for emotional distress for which the plaintiff seeks no diagnosis or treatment. They are . . . claims of generalized insult, hurt feelings, and lingering resentment. These claims do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life."); *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D. N.Y. 2009) ("Garden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; claims for serious distress refer to claims for the inducement or aggravation of a diagnosable dysfunction or equivalent injury.") (quotation and citation omitted).

Defendant cites to *Busselman v. Battell Mem'l Inst.*, No. 4:18-CV-05109-SMJ, 2019 WL 7763824 (E.D. Wash. June 18, 2019), as a supporting authority the Court should consider. ECF No. 40 at 7. The court in *Busselman* found the three

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 6

approaches to waiver unhelpful and simply concluded that the plaintiff had waived the psychotherapist-patient privilege because the plaintiff "placed her emotional status at issue by claiming Defendant caused her to suffer emotional distress damages." *Id.* at *2. This reasoning falls squarely within the broad approach. *See Doe v. City of Chula Vista*, 196 F.R.D. 562, 566 (S.D. Cal. 1999) ("The broad rule . . . establishes a bright line rule that a patient who relies on her emotional condition as an element of her claim may not assert the psychotherapist-patient privilege to preclude a defendant from obtaining discovery of her mental health records.").

While *Busselman* came out of this district, this Court has previously followed the "middle ground" approach on three prior occasions. *Adams v. BNSF Ry. Co.*, No. 13-CV-0368-TOR, 2014 WL 4415985 (E.D. Wash. Sept. 8, 2014); *Opportunity Emp. Comm'n v. Roy Farms, Inc.*, No. 12-CV-3117-TOR, 2014 WL 12788722 (E.D. Wash. Feb. 11, 2014); *Sanders v. Energy Nw.*, No. 12-CV-0580-TOR, 2013 WL 5674885 (E.D. Wash. Oct. 17, 2013). In *Adams*, the Court concluded that the plaintiff did not put his mental condition at issue with the allegation that he "suffered in the past, and will continue in the future to suffer pain and anguish, loss of enjoyment of life, permanent injury and disability and other general damages". *Id.* Rather, the Court reasoned that the plaintiff's general anguish and loss of enjoyment of life was "garden variety" emotional distress

arising out of his physical injury. *Adams*, 2014 WL 4415985, at *2. Conversely, the Court found in *Roy Farms, Inc.* that the plaintiff put his mental state "squarely at issue" where he testified at his deposition that the asserted harassment made him so upset he broke down in tears in front of coworkers, subsequently quit his job, became depressed and even at one point suicidal, and claimed the emotional distress persisted "even to this day." *Roy Farms*, 2014 WL 12788722, at *5. The Court concluded that such suffering "cannot be construed as 'ordinary or commonplace emotional distress.'" *Id.* (quoting *Ruhlman*, 194 F.R.D. at 448 n.6).

Finally, in *Sanders*, the Court found the plaintiff put his mental state in controversy where he claimed damages for the stress he suffered *and* alleged through a trial exhibit that the stress caused hypertension which triggered his vision loss and required the plaintiff to start taking blood pressure medication. *Sanders*, 2013 WL 5674885, at *3. The trial exhibit additionally revealed "potentially multiple causes" for his damages related to his claims of anxiety, anguish, stress, loss of enjoyment of life, humiliation, embarrassment, and fear. *Id.* The Court reasoned that Defendant was entitled "to test Plaintiff's credibility and the cause of those continuing harms." *Id.*

Here, "Plaintiff seeks compensation for past and future nonpecuniary losses resulting from [Defendant's conduct] including without limitation emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life . . . ." ECF

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 8

No. 41.  Additionally, during Lozano's deposition, Lozano testified that the emotional distress caused panic attacks, and that on one occasion while still employed with Defendant, she had a panic attack at work even though Templeton had not arrived, and requested to go home.  ECF No. 48.  Lozano also testified that she got car cameras and house cameras and checked them daily, and that she began driving home a different way and would get uncomfortable anytime she saw a man that resembled Templeton.  *Id.*  She further testified that after Templeton tried to follow her home, Lozano began pulling over to let cars pass if they had headlights shaped like Templeton's headlights because she was scared it was him.  *Id.*

The Court concludes that based on the allegations of the complaint, Lozano's testimony, and Plaintiff's stipulation, Plaintiff has not put Lozano's mental status at issue.  Plaintiff alleges that Templeton followed Lozano in his car after she left work on two separate occasions, prompting Lozano to complain to management that she needed someone to walk her to her car after work and take a different route home.  ECF No. 1 at ¶¶ 35,36.  Plaintiff also alleges Templeton followed Lozano while she worked, wolf whistled at her, parked his car near hers during breaks and would stare at her, and waited for Lozano outside the store after closing.  *Id.* at ¶ 27.  Moreover, while Lozano testified that she suffered from panic attacks, there was no significant disruption of her work life.  ECF No. 48.  Thus, the Court does not find that Plaintiff's claims of distress as a result of Templeton's

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 9

actions amount to an "unusually severe emotional distress extraordinary in light of the allegations." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003).

Defendant next argues that Lozano waived the privilege by telling reporters about her anxiety and psychotherapy treatment she received after a shooting occurred at the store she worked at in February 2022. ECF No. 43 at 8. Loranzo reported during an interview with the Tri-City Herald that she took a leave of absence after the shooting and then worked on exposure therapy because she could not "even drive through the parking lot without having a panic attack or fearing" for her safety. ECF No. 48. She also reported that she sought private counseling because she did not trust what Fred Meyer had to offer based on its "effort to halt the union prior to the shooting." *Id.* The Court does not find that Lozano's report that she sought treatment for an unrelated event waives the psychotherapist-patient privilege as to all of her psychotherapy medical records in the present action. Defendant can question Lozano about the news report and whether she sought treatment at trial. The Court also concludes that Plaintiff has not waived any psychotherapist-patient privilege as to Pogue.

At this time, the Court finds that any of the claimants' mental health records subject to the psychotherapist-patient privilege need not be disclosed. However, the Court will hold Plaintiff to its stipulation and arguments made here at trial.

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 10

### 2. Other Medical Records

Plaintiff argues that the claimants have a privacy interest in their medical records and such records are not at issue based on the nature of their claims. ECF No. 37 at 6. Defendant contends that the claimants' workers' compensation records and workplace accommodation and leave of absence ("LOA") records are documents within Defendant's possession and control through a third party and are not confidential medical records. ECF No. 40 at 10. Defendant argues these documents are directly relevant to the claimants' allegations of their interactions with Templeton. *Id.* Defendant further argues that it should be able to access the underlying medical records supporting the claimants' requests for light duty, workplace accommodation, or LOA. *Id.*

As Plaintiff has not placed any physical injury or condition at issued in this case, the Court is not persuaded that any of the claimants' medical information, including documentation submitted to a third party in support of workers' compensation, a workplace accommodation, or LOA, is relevant or "critical to Defendant's defenses." Defendant has provided no explanation other than a conclusory assertion that the records are relevant to the claimants' alleged interactions with Templeton. Therefore, Defendant is precluded from using any medical information obtained from third parties unless it demonstrates relevancy. Similarly, Plaintiff need not disclose the underlying medical records unless

Defendant can demonstrate how the medical records supporting a particular workers' compensation, workplace accommodation, or LOA claim are relevant. The Court may then, upon motion, review the records *in camera* to determine relevancy.

The Court retains authority to modify or reconsider its ruling in the event further discovery warrants its reconsideration.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Protective Order (ECF No. 37) is **GRANTED**. All medical information and documents of claimants, Melissa Lozano, and Kierstin Pogue, is protected from disclosure. All psychotherapist-patient information and documents related to Melissa Lozano and Kierstin Pogue are privileged and protected from disclosure.

2. Defendant's Motion to Seal (ECF No. 41) is **GRANTED**.

3. Defendant's Motion for Leave to File Deposition Transcript Excerpts (ECF No. 47) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED June 18, 2026.



THOMAS O. RICE
United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER ~ 12