FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 19, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Plaintiff,<br>v.<br>FRED MEYER STORES, INC.,<br>Defendant. | No. 4:24-CV-05085-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 79. The motion was heard without oral argument. Plaintiff is represented by Arthur D. Welton, Brian Hong, and Damien Lee. Defendant is represented by Barry Hartstein, Christine Sargent, Jordan Wada, Megan Crowhurst, and Rachael Curtis.

Plaintiff EEOC brought this Title VII action against Defendant Fred Meyer, asserting that Melissa Lozano and other female employees were subjected to unlawful harassment and a hostile work environment. Defendant now moves for summary judgment, arguing that the alleged conduct by the male co-worker was not sexual harassment, and therefore Defendant cannot be held liable for conduct that was neither harassing in nature nor severe or pervasive. It asserts it went above and beyond that which is required of an employer to mitigate the behavior of which the female employee complained, despite there being no legal obligation to do so.

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## Facts

Fred Meyer is a large retailer in the Pacific Northwest, selling groceries, clothing, and household items. The store in Richland, Washington has over 250 employees ("associates") among the numerous departments, which include the Home and Apparel Departments.

The alleged harasser, George Templeton, began working for Fred Meyer in

2012. He typically worked as a cashier in the Home Department. Templeton would focus his attention on younger female coworkers—he would follow them, stare at them, request their assistance at the cash register, wolf whistle at them, and comment on their physical appearance.

Melissa Lozano began working at the Richland Fred Meyer store in 2018 in the Apparel Department., Lozano was a Person-In-Charge (PIC), which meant she had the ability to clear up the register if a cashier needed to void a transaction or if the transaction exceeded a certain dollar amount. In May 2021, Loranzo complained to Vaness Sanchez, HR Assistant, and Emily Pitcher, her supervisor, that Templeton caller her almost hourly for register overrides. She noticed that Templeton would find reasons to be around her to see what she was doing. He would stare at her and watch what she was doing. As a result, she was released from having to override for Templeton, but he still called her several times. She told him that she would not help him, but he continued to call her and ask for help.

On June 24, 2021, she sent an email to Sanchez and Pitcher that Templeton told her, "hello beautiful" and wolf-whistled at her. On June 27, 2021, Loranzo sent another email and complained when Templeton asked a male coworker about Lozano's schedule and her days off, waiting for her at the breakroom, following her on the sales floor, starting at her through lunch and asking to sit in her car, and following her from the store parking lot and onto the road. She was worried that Templeton keeps pushing it further. She did not receive any response.

In July 2021, Lozano wrote another email to Sanchez and Store Director Matthew Nellor about how Templeton hung around the store while she was closing, and how he parked his car next to hers. She reported Templeton followed her through the store trying to engage her and giving her unwanted attention. She did not receive any response.

On July 23, 2021, Templeton returned to the store after he had finished his shift. He tried to engage with Lozano, but she ignored him. He followed her in his

car from the store parking lot, and she took evasive action to lose him.

On August 6, 2021, Lozano emailed Nellor, Sanchez, and Pitcher that on July 23 Templeton followed her from the store parking lot at a high rate of speed and hovered beside her car until she took an evasive maneuver to escape him. She asked to have someone walk her to her car.

Nellor met with Lozano on August 7, 2021—the first time Defendant interviewed her about any complaint about Templeton—where she again reported that he called her "beautiful;" Nellor said he could do nothing about off-premises conduct but admitted that being followed on the road "could be scary for a reasonable woman." Nellor did not ask about her other complaints.

On August 8, she reported that Templeton asked whether she "liked that he caught up to" her, and that he physically bumped into her, and on August 29 she reported that he continued to approach, stare at, and try to engage with her and that she told him to "leave me alone." On August 16, 2021, Templeton came into the customer service area and stared at Lozano. On August 21, 2021, he walked by Lozano and said hi.

On August 28, 2021, Sanchez and Nellor interviewed Templeton, but only about the road-following incident and not about the other complaints. They concluded nothing could be done. On the same day Templeton walked up to Lozano. She told him to leave her alone, and he seemed upset.

On August 29, 2021, Lozano sent an email that Templeton was continuing to interact with her. She met with Nellor on August 30, 2021.

On October 9, 2021, Templeton tried to engage with Lozano twice even though Defendant had instructed him to have no contact with her. Nellor knew Templeton was disobeying him by pursuing Lozano, but Defendant again did not discipline Templeton. On October 11, 2021, Lozano sent an email, complaining about Templeton's conduct, to two high-ranking corporate officers at Defendant's

headquarters and detailed management's failure to address it. Defendant never responded to her.

On October 26, 2021, Sanchez directed Lozano to work at the Home Department entrance where Templeton reported for his shift. Being there made Lozano have a panic attack. She had a meeting with Sanchez and Assistant Store Leader Gustovao Valladares. During that meeting she said that being in the Home Department entrance was difficult for her, but they said that Templeton waving to her was not sexual harassment and they could not control him. They also stated that she would need hard evidence.

On October 27, 2021, when questioned, Templeton first feigned ignorance, then admitted that he disobeyed the no-contact directive. In November 2021, Lozano had another interaction with Templeton. She stayed in the stockroom until he left the area.

According to Lozano, from about early August 2021 to December 2021, Templeton would come to the store when he was not on shift or would come early than his scheduled shift. He would frequently be in the same area as Lozano, stare at her, and constantly look over at her while walking through the store. He would enter the store at the doors where she was stationed and leave through the same doors.

Kierstin Pogue is a former Home Clerk at the Fred Meyer Store in Richland. From June to December 2021, Templeton subjected Pogue to sexual comments about twice a week, *e.g.*, remarked on her clothing, hair, and body, stared at her backside as she cleaned, and told her that cleaning was "a woman's job"—and hung around her at closing. Pogue knew Lozano had complained about Templeton to no effect, saw Lozano avoiding him, and heard from other Apparel Department female that Templeton stared at and catcalled them. On December 8, 2021, Templeton showed Pogue a holiday-flyer of a woman in a revealing gold mini dress and told her she would "look good in it." Pogue reported his harassment.

Matthew McCall, a clerk in the Home Department, said in his declaration that he observed Templeton target female employees in the Apparel Department and customer service department multiple times for overrides, even though male employees in the Home Department (where Templeton worked) were available. McCall did not believe Templeton had any justifiable reason to call for overrides outside the Home Department. He sent an email to Vanessa Sanchez, Shawn Felton, and Karen Lobach on June 25, 2021 regarding Templeton sexually harassing female employees. He observed Templeton was calling for overrides from female employees over the phone and bypassing the public overhead system so he could conceal his sexual harassment from him. He relayed statements from Larissa Chapin who told him that in 2020, Templeton was making inappropriate comments about her body and appearance that made her feel uncomfortable.

Defendant suspended Templeton on December 13, 2021, and after an investigation, fired him on December 27, 2021.

**Legal Framework**

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment is a form of sex discrimination. By tolerating sexual harassment against its employees, the employer is deemed to have adversely changed the terms of their employment in violation of Title VII. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). "Title VII is not a fault-based tort scheme. Title VII is aimed at the consequences or effects of an employment practice and not at the ... motivation of co-workers or employers." *Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir.1991).

To establish the female employees was subjected to a hostile work environment, the EEOC must prove that: (1) the employees were subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and

(3) the conduct was sufficiently severe er pervasive to alter the conditions of employment and create an abusive working environment. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).

To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, the court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 648 (quotation omitted). "Not every insult or harassing comment will constitute a hostile work environment." *Id.* (quotation omitted). Courts must "ensure that Title VII does not become a general civility code." *Id.* (quotation omitted). A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* The required severity for "harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted). The conduct at issue need not be "overtly sex- or gender-specific." *E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844 (9th Cir. 2005). "The ultimate question in either event is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quotation omitted).

Where harassment by a co-worker is alleged, the employer can be held liable only where "its own negligence is a cause of the harassment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, (1998). Title VII liability is direct, not derivative; therefore an employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct. *Swenson v. Potter*, 271 F.3d1184, 1191-92 (9th Cir. 2001).

If the employer fails to take corrective action after learning of an employee's sexually harassing conduct or takes inadequate action that emboldens the harasser

to continue his misconduct, the employer can be deemed to have "adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998). On the other hand, an employer cannot be held liable for misconduct of which it is unaware. *See Brooks*, 229 F.3d at 924. The employee's liability, if any, runs only from the time it "knew or should have known about the conduct and failed to stop it." *Ellerth*, 524 U.S. at 759.

Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is "reasonably calculated to end the harassment." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001) This obligation has two parts. *Swenson*, 271 F.3d at 1192. The first consists of the temporary steps the employer takes to deal with the situation while it determines whether the complaint is justified. *Id.* The second consists of the permanent remedial steps the employer takes once it has completed its investigation. *Id.* Summary judgment should be denied where the employer's response to known harassment subjected the employee to further harassment. *Fried*, 18 F.4th at 651.

**Analysis**

Here, summary judgment is not appropriate. There is sufficient evidence for a rational trier of fact to conclude that the alleged harassment by Templeton was because of sex, was sufficiently severe to support a hostile work environment claim under Title VII, and Defendant's response was inadequate.

//

//

//

//

//

//

//

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 79, is **DENIED**.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 19th day of November 2026.

Stan Bastian
Chief United States District Judge